UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMON DIVISION

| MARY PICKENS, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:17-CV-190-TLS |
| | ) | |
| NEW YORK LIFE INSURANCE | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Mary Pickens filed a state court Complaint [ECF No. 7] on March 21, 2017, against Defendants New York Life Insurance Company and AARP Corporation. The case was removed to federal court [ECF No. 1] on April 25, 2017. The Defendants filed a Motion for Judgment on the Pleadings [ECF No. 14] on June 16, 2017. The Plaintiff filed her Opposition [ECF No. 21] on November 7, 2017. On November 14, 2017, the Defendants filed their Reply [ECF No. 22] in further support of their Motion.

**BACKGROUND**

On April 30, 2014, Plaintiff Mary Pickens made an application for a life insurance policy with Defendants New York Life Insurance Company ("New York Life") and AARP Corporation insuring the life of her brother, Augustus Williams. A life insurance policy was issued on the life of Augustus Williams on June 12, 2015 with life insurance certificate number A7532637 ("Insurance Certificate"). Def. New York Life Answer, Ex. 1, ECF No. 12-1. The benefits due

under the insurance policy were in the amount of $25,000. The beneficiaries under the life insurance policy were the Plaintiff and Shatasha Plump ("Plump").

Augustus Williams died on March 5, 2016. Subsequently, the Plaintiff filed a claim under the life insurance policy with New York Life. After several rounds of communication between the parties, New York Life determined that Augustus Williams "failed to disclose material information concerning his medical history." Based on this determination, New York Life denied that any payment was owed under the Insurance Certificate, which New York Life communicated to the Plaintiff.

On October 26, 2016, New York Life sent Plaintiff and Plump checks for $419 that included the following language: "Refund for premiums paid under contract A7532637. Coverage is hereby rescinded." Def. New York Life's Answer, ¶ 9, Exs. 2 & 3. Plaintiff and Plump signed and cashed the checks on October 31, 2016 and April 18, 2017, respectively. *Id*.

Plaintiff subsequently brought this instant suit against the Defendants alleging that rescission of the life insurance policy was unlawful and brought the following claims against the Defendants: Breach of Contract (Count I); Negligent Infliction of Emotional Distress (Count II); Intentional Infliction of Emotional Distress (Count III); and Violation of Indiana Deceptive Practices Act and Consumer Protection Laws (Count IV).

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the plaintiff has filed a complaint and the defendant has filed an answer. *See* Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings is generally not favored and courts apply a fairly restrictive standard in ruling on the motion." *Urbanski v. Tech Data*, No. 3:07-cv-

17, 2008 WL 141574, at *10 (N.D. Ind. Jan. 11, 2008) (citing *Fox v. Terra Haute Indep. Broads., Inc.*, 701 F. Supp. 172, 173 (S.D. Ind. 1988)).

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *See Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Therefore, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). When applying this standard, a Court is to accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018)

## ANALYSIS

**A.    Rescission**

The Defendants argue that all four of Plaintiff's claims fail because the Plaintiff consented to rescission of the Insurance Certificate. In support of their contention, the Defendants point to the Plaintiff cashing a check containing the language: "Refund for premiums paid under contract A7532637. Coverage is hereby rescinded." Def. New York Life's Answer, ¶ 9, Exs. 2 & 3.

Under Indiana law, parties may rescind a contract through mutual agreement to discharge and terminate their rights and obligations under the contract. *Lindenborg v. M&L Builders &*

*Brokers, Inc.*, 302 N.E.2d 816, 823 (Ind. Ct. App. 1973). The parties do not need to enter into an express or written agreement to rescind a contract; parties' actions demonstrating an intent to rescind the contract is sufficient. *See Horine v. Greencastle Prod. Credit Ass'n*, 505 N.E.2d 802, 805 (Ind. Ct. App. 1987); *Brown v. Young*, 110 N.E. 562, 566 (Ind. Ct. App. 1915). "Rescission is a fact. The trial court looks to the course of conduct of the parties to determine if rescission occurred in fact." *Horine*, 505 N.E.2d at 805.

At this stage, the Court declines to find that the Plaintiff has failed to plead facts supporting her position regarding the enforceability of the Insurance Certificate. As stated above, whether the parties mutually agreed to rescind is a question of fact evidenced by the parties' actions demonstrating an intent to discharge their duties and obligations under the contract. Here, there is a question as to whether the Plaintiff signing and cashing the check for $419 was a manifestation by the Plaintiff to discharge the Defendants' obligations under the Insurance Certificate.

The Defendants cite to Indiana case law to contend that the Plaintiff signing the check amounted to an accord and satisfaction discharging the Certificate of Insurance. Defs.' Reply in Supp. of Mot., at 4. For example, the Defendants rely on *Mominee v. King*, where the Court of Appeals in Indiana found that a creditor cashing a check that was delivered to him in satisfaction of a disputed debt amounted to an accord and satisfaction discharging the debt. 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994). What the Defendants fail to acknowledge is that the court in *Mominee* stated that when "a check [is] tendered in satisfaction of a claim, . . . most importantly, the creditor must positively *understand* the condition upon which the check is tendered." *Id.* at 1283 (citation omitted) (emphasis added). The court in *Monimee* then proceeded to analyze whether

4

the creditor "*specifically intended* to submit his check as payment in full" with respect to the disputed claim. *Id.* (emphasis added).

At this stage in the litigation, the Court cannot undertake an analysis of whether Plaintiff *understood* New York Life's check for $419 as payment satisfying her claim of benefits under the Certificate of Insurance, which provided $25,000 in life insurance proceeds. Relatedly, the Court cannot determine from the pleadings whether the Plaintiff *specifically intended* to settle her claim under the Certificate of Insurance by cashing the check for $419. Consequently, the Defendants' rescission argument fails at the pleadings stage.

**B.     Promissory Estoppel**

The Defendants argue that the Plaintiff's promissory estoppel claim should likewise be dismissed as the parties' pleadings demonstrate the existence of a written agreement, the Insurance Certificate. The Defendants cite to several cases finding that, under Indiana law, a plaintiff cannot assert a promissory estoppel claim where a written contract controls the promise upon which the claim is based. Defs.' Br. in Supp. at 5.

The Court finds that the issue of promissory estoppel has not been fully briefed to allow for a decision at this stage. The Defendants have not addressed how the Court should rule on the promissory estoppel claim if the Insurance Certificate was indeed later decided to have been rescinded by mutual consent. The interplay between whether the Insurance Certificate was rescinded and the promissory estoppel claim would appear to be an important one. If the Insurance Certificate was rescinded by mutual consent, then that perhaps may have some bearing on whether there was or was not a valid, written contract controlling the parties' relationship at the time of Defendants' alleged improper conduct. Therefore, it is premature at this stage of the

5

litigation for the Court to decide whether the Plaintiff's promissory estoppel claim survives, especially in light of the Court's decision on Defendants' rescission argument.

## C. Negligent Infliction of Emotional Distress

The Defendants next argue that the Plaintiff has failed to state a claim for negligent infliction of emotional distress, Count II. Under Indiana law, the plaintiff must allege a specific legal duty that the defendant breached; "stand-alone actions for negligent infliction of emotional distress are not cognizable in Indiana." *Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011). The Indiana Supreme Court also instructed in *Spangler* that claims for negligent infliction of emotional distress are permitted in only two situations: the "bystander rule" and the "modified impact rule." *Id.* at 466. The bystander rule is implicated when a plaintiff witnesses the death or severe injury of a relative caused by the defendant's negligent conduct. *Id*. The modified impact rule requires a plaintiff to have suffered a direct physical impact from the plaintiff's direct involvement in a defendant's negligent conduct. *Id*.

In this case, the Plaintiff's Complaint is devoid of any facts suggesting that the Defendants owed the Plaintiff any specific legal duty for the purposes of the negligent infliction of emotional distress claim. Moreover, there are no facts to show that the Plaintiff witnessed the death of a relative resulting from the Defendants' negligent conduct that would implicate the bystander rule nor facts showing any direct physical impact to the Plaintiff that would implicate the modified impact rule. Hence, the Plaintiff cannot sustain a claim for negligent infliction of emotional distress.

Furthermore, under Indiana law, when the damages sought are purely for economic or property loss, then a plaintiff cannot recover pursuant to a negligent infliction of emotional distress theory. *See Ketchmark v. N. Ind. Pub. Serv. Co.*, 818 N.E.2d 522, 524–25 (Ind. Ct. App.

2004) ("[W]e concluded that an economic loss and its resulting emotional trauma is not 'sufficiently serious' to warrant the imposition of liability. While we recognized that an economic loss may cause emotional distress, the loss of a loved one cannot be compared to the loss of an investment. Even if a person is directly involved in a property loss, we decline to extend liability for negligent infliction of emotional distress to those cases involving purely property loss and the concomitant emotional distress caused by that loss."). The allegations in the Plaintiff's Complaint indicate that the Plaintiff is seeking damages resulting from an economic loss—denial of benefits under an insurance policy. As these damages are purely economic, Plaintiff cannot recover under a negligent infliction of emotional distress theory.

Therefore, for the reasons stated above, the Court finds that the Plaintiff has failed to state a claim for negligent infliction of emotional distress.

### D. Intentional Infliction of Emotional Distress

The Defendants also move this Court to find that the Plaintiff has failed to state a claim for intentional infliction of emotional distress, Count III. "The elements of the tort are that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another. The requirements to prove this tort are rigorous." *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011) (internal quotations and citations omitted).

The Plaintiff's Complaint fails to allege facts sufficient to make a claim for intentional infliction of emotional distress. There are no facts to suggest that the Defendants' conduct rises to the level of "extreme and outrageous conduct." Looking at the facts pleaded in a light favorable to the Plaintiff, the conduct that the Defendants are alleged to have engaged in is

7

unilaterally cancelling an insurance agreement, and thereby denying the Plaintiff insurance benefits she was due. Although such conduct, if true, is certainly distressing, the parties have presented no case law to suggest that such conduct "goes beyond all possible bounds of decency such that it would have been the type of atrocious and utterly intolerable conduct [where a finding of] intentional infliction of emotional distress claim [would be] appropriate." *Yeatts v. Zimmer Biomet Holdings, Inc.*, No. 3:16-CV-706-MGG, 2017 WL 1375117, at *6 (N.D. Ind. April 17, 2017) (citing to Indiana cases). Hence, the Court finds that the Plaintiff's intentional infliction of emotional distress claim does not survive.

### E. Indiana Deceptive Practices act and Consumer Protection Laws

Defendants ask this Court to dismiss Count IV of the Complaint, "Violation of the Indiana Deceptive Practices Act and Consumer Protection Laws," for failure to state a claim. The Plaintiff alleges that Defendants used the Plaintiff's funds in a manner that violated "federal or state law governing deceptive practices or the regulation of consumer protection" and violated "the federal Dodd Frank Act." Compl. Count IV, ¶¶ 6–7.

First, the Court finds that the Plaintiff has not pled facts sufficient to allege a claim under the Indiana Deceptive Consumer Sales Act ("DCSA"). The DCSA provides recourse to consumers for practices deemed deceptive consumer transactions. *McKinney v. State*, 693 N.E.2d 65, 67 (Ind. 1998) (citing Ind. Code §§ 24-5-0.5-1 to -10). The DCSA, however, defines a "consumer transaction" as a "sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, or an intangible, *except securities and policies or contracts of insurance* issued by corporations authorized to transact an insurance business under the laws of the state of Indiana . . . ." Ind. Code § 24-5-0.5-2(a)(1) (emphasis added). The facts alleged in the Complaint relate exclusively to the Defendants' conduct under the Certificate of

Insurance, an insurance policy. Consequently, as "policies or contracts of insurance" are explicitly excluded from the DCSA, the Plaintiff cannot hold the Defendants liable under the DCSA.

Second, the Plaintiff's one-sentence allegation of Defendants' Dodd-Frank Wall Street Reform and Consumer Protection Act violation is insufficient to state a claim upon which relief can be granted. The Court finds Judge Simon's decision in *Sims v. New Penn Fin. LLC*, No. 3:15-CV-263, 2016 WL 6610835 (N.D. Ind. Nov. 8, 2016) instructive. In *Sims*, the plaintiffs brought a claim under the Dodd-Frank Act against a mortgage servicer after their home was foreclosed upon. *Id.* at 1. The Plaintiffs alleged that the mortgage servicer violated Dodd-Frank "by failing to have all of its employees that assisted the [the plaintiffs] in applying for the assumption to be qualified mortgage originators and failed to include the unique qualifiers on its documents," thereby violating the duty of care the mortgage servicer owed the plaintiffs. *Id.* at 6. In dismissing the claim, Judge Simon stated:

> This claim is not viable. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 699 (1979). While there is no doubt that Dodd-Frank creates a private cause of action for whistleblowers, courts have been reluctant to find that Dodd-Frank created any other private cause of action. *See Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d 749, 760–61 (S.D.N.Y. 2015) (collecting cases and discussing courts' reluctance to read a private cause of action into Dodd-Frank). And the complaint fails to identify any language in Dodd-Frank that suggests a different course of action here.

*Id.*

In this case, the Plaintiff alleges that the Defendants violated the Dodd-Frank Act when they violated a "legal responsibility" owed to the Plaintiff by virtue of the Defendants "us[ing] Plaintiff's funds." Compl. at ¶ 7. Like the plaintiffs in *Sims*, the Plaintiff here alleges no facts to suggest she is a protected whistleblower under Dodd-Frank. Consequently, the Plaintiff's Dodd-

9

Frank claim does not survive as Dodd-Frank does not provide for a private cause of action for the conduct the Plaintiff alleges in her Complaint.

## CONCLUSION

Accordingly, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion for Judgment on the Pleadings [ECF No. 14]. Counts II, III, and IV are DISMISSED.

SO ORDERED on September 27, 2019.

                                           s/ Theresa L. Springmann
                                          CHIEF JUDGE THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT